Our first case for oral argument this morning, January 31, 2014, is Case No. 13-6045, N. Ray DeJuan, LLC, etc., Mahavishnu Corp. v. DeJuan, LLC. Mr. McDaniel? Good morning, sir. Good morning. May it please the Court, members of this Eighth Circuit Bankruptcy Appeals Panel. Jeffrey McDaniel, Brooks Law Firm, Rock Island, Illinois. Your Honors, we're here today to explore whether or not there was reversible error committed by the Bankruptcy Court of the Southern District of Iowa on this fairly interesting case from a factual perspective. The arguments are fairly straightforward. I think the briefs have been submitted. If there are questions, you'll jump in. Otherwise, I'll just go ahead and proceed. Let me jump in probably sooner than you were hoping for. My first question is, how is the Bankruptcy Court's decision a final order? Well, the parties agreed to bifurcate the subordination aspect of the case because they couldn't have a confirmed plan until this part of the case was resolved. And so by agreement of the parties, that is how we proceeded. But the confirmation order, there's been no confirmation hearing. That's been stayed, correct? That is true. So wouldn't the confirmation order, if you bifurcated by definition, you started with one unit and you split it into two. Isn't the one unit, the confirmation process, still pending? That is true. That is absolutely true. So how do we have jurisdiction to hear the appeal? Well, if it's not a final order, then that may very well be the end of our session. Well, I don't mean to stop your argument. You can proceed with your argument. But I have a significant concern that we do not have jurisdiction. I do understand. I do understand. And this case proceeded in an unusual format. And sometimes when you start going down the unusual road, you end up where we are today. Okay. I wanted to give you the opportunity to at least address that, but please proceed. I think that's a fair question. That is a fair question. What we're looking at here really is equitable subordination, and we're looking at two issues. We're looking at the purchase price for the property, and we're looking at the sales price for the property. And we had a two-day trial on this, and there were a lot of exhibits. There was a lot of testimony. The point that I wanted to make that in order for the bankruptcy court to go ahead and rule for equitable subordination, it was set out that there was an inadequate purchase price and there was an inadequate sales price. And this case is a little bit unusual because we were in state court previously, different attorneys, in the setting of a foreclosure. And in that case, there was a finding by the state court that there was no special relationship based on this Mama G concept. The issue of an inequitable purchase price or an inequitable sales price was not an issue that was addressed until we get to bankruptcy court. And then we get to bankruptcy court. And in the state court, what was the status of the state court case? There was a court of appeals decision. Was that appealed to the Iowa Supreme Court? It was not. It was not. So that was a final judgment at the time of the trial. The issues were somewhat analogous because what was argued there was that there was misrepresentation as to the sale, i.e. the condition of the premises. And so what we had argued in our brief basically was many of the issues that go to an unjust or unreasonable purchase price were either adjudicated in the state court proceeding and therefore are res judicata or the bankruptcy court itself ruled, for example, there was no fraud in the purchase of the motel. There was no fiduciary duty between the parties. There was no third-party control. The court of appeals for Iowa said no special relationship based on the Mama G concept. Then the issue that really was before the state court was that there was no basis to rescind the real estate contract. So from our perspective, with all that evidence, how can you have an unjust or unreasonable purchase price finding by the bankruptcy court when all the other findings seem to run contrary to it, that it is an arms-length transaction? So the argument was that there is no inequitable conduct as to the purchase price because through a combination of the state court findings and or the bankruptcy court's rulings, there's nothing there other than maybe a dislike for the purchase price. But all other indicators that would create a potential finding for inequitable conduct, they're just not present. So for that basis, we believe that that conclusion that it was an inequitable purchase price is clearly erroneous. It's not supported by substantial evidence. We laid out in our brief the numbers over time, and it's a mixed bag. We're looking at a purchase price for a full hotel. We're looking at a sale price for the full hotel. We're looking at a fire, which reduced the number of rooms that were usable. We are also looking at a bankruptcy court's opinion as to the value. You see a range of values here. And so because there is a range of value, our position was that it's clearly erroneous to say the value is between $400,000 and $430,000 in light of all these other numbers. And we have some pretty severe pronouncements from the court saying those numbers in the face of other numbers. And so it appears that those other figures, whether or not it's $1.5 on the high side or it's $729,000 based on an assessment, you can't say it's between $400,000 and $430,000. And then I use an apples-to-apples analysis as well. What the court does is they go ahead and they say, well, we're going to look at the purchase price at the foreclosure sale of $430,000. Okay, so that's purchase price. Then we're going to look at an assessment number of $400,000. And the number clearly is in that range. Well, I don't think the number was clearly in that range. Now, I think the challenge for this case, if you look at the appendix, it's enormous. And there's an enormous number of documents that are in there. So I could understand how with so many numbers it could be at least arguable. But the pronouncement that the number is clearly in that range and, therefore, the $625,000 purchase price is a product of overreaching is just not supported by the evidence. The court says there's no evidence of how the purchase price of $625,000 was justified. Do you have to justify a purchase price for a contract? I don't think you do. And I think in light of what the state court ruled and in light of what the bankruptcy court found, I don't think you have to justify it. It's an arm's-length transaction. There was no third-party control. There was no fiduciary duty. There was nothing there. So if the analysis is that there's a bad purchase price and a bad sales price and we're going to compare those two, you have to prove both of those were bad numbers. And clearly it's our position that the purchase price is not a bad number. Let's go to the sales price here. Tons of evidence as to what's going on with this property. This is a property where you have an offer in the 600s from Soperwalla. You have another number that comes in at 288. If you look at the environmental issues that are in the record, you look at the water issues that are in the record, you see this is a property that is losing value. The bankruptcy court said, basically, that there was no justification for a $1 purchase price. And I'm paraphrasing here. Well, let me ask you about that $1 purchase price. First of all, did that ever become final? Because didn't a tax sale intervene and the property got sold through a tax sale? So did the dollar bid ever become anything? In other words, in the process in Iowa, what happens after the sheriff's sale? Does there have to be a confirmation by the court? No, no. In some states you do confirm the sale. I mean, what happened here, and that's a great point to make sure we understand, is that after the successful bid of $1, the sheriff issued a certificate of purchase. So there is no deed that vests in this case. It's a certificate of purchase, and that's on July 20th. And then we look by August 1st. The statutory period for the vesting of the tax deed has kicked in. They apply for the tax deed and they get it. So in this factual scenario, Maha Vishnu never did receive title. So what happens when a buyer at a foreclosure sale in Iowa gets a certificate of purchase? Do they have to wait for a redemption period or something? If there is a redemption period, then you definitely have to wait. The certificate of purchase is given so that you have proof that you're the purchaser and you can insure the property, and then you basically wait for the sheriff to go ahead and issue the deed. And that deed should have been issued sometime around August 1st. It just never was issued, and that may be because it was moot. You know, I think the thing that's really important to understand is that the bankruptcy court said all actions taken by claimant appear to be calculated and directed towards this goal by increasing the maximum liability under the Daiwan mortgage. Well, all we have to do is look at the exhibit that shows the proposed sale to KARP, K-A-R-P. That's $280,000 sales price with a release of liability. Before we get there, wasn't the property also subject to a mortgage or two that the seller had put on the property? At the time. When did those get – there were two mortgages at one time. Did they both get released? Yeah, they were. They were both released within a year. No, I mean as of the time of the sale, the foreclosure sale. Oh, yeah. Those had been paid and had been satisfied, and that should be in the appendix. I think the testimony at trial basically was that Mahavishnu had used the equity in that property to build another hotel, and when that hotel was constructed, then the mortgages were released. Okay. I did reserve a little time, so I will hold that unless there are some questions. Thank you, Mr. McDaniel. And is it Hawk or Hockey? Good morning, Your Honors. Dale Hockey, H-A-A-K-E, on behalf of Daiwan LLC. May it please this Honorable Court, Mr. McDaniel. I much prefer to be in the position of the appellee. I think that the appellant in this case, notwithstanding the jurisdictional question that was asked, I think the appellant in this case has a heavy burden to show that the trial court, after two days of trial, and we went hot and heavy for those two days, Judge Shodin very carefully analyzed and viewed the credibility of these parties. The appellant points out that she used words like all, substantial, etc., and I do believe that was appropriate. She took the record as a whole. She took the cold, calculating Magan Patel, who sat there basically saying, I don't care about any of this. I want my money. She heard the testimony of how Mr. Tucker was picked up and driven to Cedar Rapids to the attorneys for the sellers. She heard the testimony, the very strange testimony about the $1,000 that was fleeced out of my client in the car on the way there. She heard the testimony that he wanted to see the motel on the way back from Cedar Rapids. If you come down 380 from Cedar Rapids to Interstate 80, just to the west of Iowa City, if you take a turn to the west, two exits, there's the motel. Mr. Patel did not want my client to see the hotel at that time. I think that the- Could you tell me, I'm just a little confused about what the decision was and how the numbers add up. The original amount of the claim that was filed by Mr. McDaniel's client was $612,879 secured and about $75,000 unsecured. So basically what the court did was to take about $458,000 off of the secured claim. Yes. And based on subordination, what happened to that $458,000 claim? Because we ended up with a secured claim of $154,000 and the same $75,000 unsecured. Yes. I believe that her opinion- let me back up, Your Honor. I believe that under 510C, under an appropriate subordination, the portion that is subordinated is subordinated to all classes of creditors. But it's still a claim. It's still somewhere. Well, maybe not. I'm saying under principles of equitable subordination it should be somewhere. I'm asking where it is now. Is it just gone? No, I think it is below the equity interest holders. Below the equity. Yes. Is there something in the opinion that says that? No, I believe that's what 510C would do, and I think the case law would point out that by subordinating, it is subordinated to all classes. It's not just subordinated to some classes, but it's subordinated to all classes. But isn't that more of a disallowance of a secured claim than a subordination? I mean, I understand subordination when you're subordinating a first mortgage to a second mortgage. I get that. But it seems to me that what the bankruptcy court did in this case was it disallowed a significant portion of the secured claim and just made it go away. Well, what I think, Your Honor, in the first instance that you suggested, the subordination of a mortgage, that's usually a consensual act. But under 510C, if there is, as was found in this case, inequitable conduct, then that subordination is not the consensual subordination where one lender says, okay, you're going to put another $100,000 in, we'll subordinate to you so you can be in first place. This is a situation where under 510C, the conduct of the claimant has affected not just the debtor in possession, but the creditor body. And that is where equitable subordination really comes in. It's not just damage or injury to the debtor in possession. What's required under 510C is injury to the creditor body. And I believe that's what Judge Shodin found. And so I don't think that the, I mean, it might be a little bit of Alice in Wonderland, but I do believe the claim is subordinated to the lowest level of claims. And in Chapter 11, that almost always is the equity interest holders. So basically what you're saying is that your plan that hasn't yet been confirmed needs to be modified to treat that somehow. Yes. In fact, after the decision before the appeal, Judge Shodin had issued a docket text only order indicating the dates that I needed to further amend my Chapter 11 plan to be consistent with this litigation. Along those lines, Judge Nails started off with the question of jurisdiction and effectively what that question is, is this appeal interlocutory? So if this appeal is interlocutory, then we aren't automatically barred from jurisdiction, I believe, if deciding an interlocutory appeal would assist in the efficient administration of the case. I don't know what the exact language is. What are your thoughts on that? Would our deciding this issue assist in the furtherance of the underlying bankruptcy case? Absolutely, Your Honor. Right now, we would have the procedural situation where we would be amending our Chapter 11 plan. We would be in the same position where they would be objecting to the plan. And then if they wanted to appeal the ruling on the claim, they would then appeal it. And the amount of time taken, it seems like the judicial economy would not be there. We would be much further down the line and maybe before, Your Honors, in another year. Whereas if this issue gets resolved, then the potential confirmation of the Chapter 11 plan would go forward. But if the resolution were a reversal, then presumably there would be other causes of action that would have to be decided. You would ask that the claim be subordinated or reduced based on other causes of action as well. Well, I certainly would hope that I had a few more arrows in my quiver, Your Honor. But in the event that this panel does decide to reverse Judge Shodin, I do believe I would have some other arguments. And that would also, I think, impede the efficiency of the judicial economy of a Chapter 11. We're talking about all of the creditor body here. As Your Honors well know, in Chapter 11, the debtor in possession is the fiduciary for the creditors. And so we're not trying to take care of just one creditor. We're looking at our entire creditor body. Aren't your other arguments pretty much subsumed by the equitable subordination argument, or are they? I think… The good faith and fair dealing and some of the other arguments you made. The UCC argument. There were several. Your Honor, I think one of the most important arguments that I have, and I mentioned this in a footnote, I did not cross appeal. She didn't really deny the impairment of collateral. But the impairment of collateral argument would result in a zero liability, not merely a subordinated claim and a secured claim of $158,000 or whatever. I thought that was a very strong argument. I totally disagree with my learned colleague that, for some reason, the state court proceedings and rescission have a heck of a lot to do with this. Different parties were in that suit.  So there's really no… Even though the argument's made, oh, this is res judicata and Judge Shodin has to follow the state court. Totally different issues involved in that. Granted, they come out of the same set of facts. But res judicata, collateral estoppel, issue preclusion, they all require the similarity of the parties, similarity of the issues. Rescission of a contract is not the same thing as 510C, equitable subordination. But the bankruptcy court adopted those findings and you didn't take an appeal from it, so isn't that the record before us? Well, no, the record is not that because the Iowa courts ruled the way they did that she believed that she had to rule that way. The argument is made by the appellant in the reply brief that under Grogan v. Garner, she somehow has to adopt all those findings. Well, but separate and apart from that, she did, in her opinion, adopt the findings of the state court and of the Iowa Court of Appeals, did she not? Not in their entirety at all, Your Honor. Well, no, but with regard to the fiduciary duty, with regard to, in essence, the Mama G relationship, she adopted those findings, did she not? She pointed to some of those findings and didn't want to revisit some of those findings. And you're right, Your Honor, when I first got this 21-page decision, I'm reading through the decision, I lose, I lose, I lose, I lose. You win. And at the end, I win. Now, the reason for that is the accretion of conduct in this case. And maybe Judge Shodin, if she did take six months to write the opinion, and I know she worked very hard on it, maybe she could have been a little bit stronger in certain aspects, but I believe that she took the accumulated evidence in this case of these witnesses and found that the conduct throughout was inequitable and was designed ultimately to make sure that the highest possible deficiency came out of that Williamsburg motel so that they could go after Mr. Tucker's entity that was cash flowing. I think that the, I want to compliment Mr. McDaniel on the excellent use of all of these different potential purchase prices and figures, but they really don't help us ultimately that much. We have a 120-room hotel that's in 1992. It burns. Judge Kilberg frankly admitted in the prior Chapter 11 of the prior owner of this hotel, it's really difficult to come up with a value here. We went from 120 rooms with a swimming pool to a burned-out shell of 34 rooms. He pointed out that the move-on to Mahavishnu and moving to lift the stay was desperate to get someone in there. Mr. Patel testified that even Shalom Hospitality that was operating the hotel after the fire and were experienced weren't able to make it operate. Mr. Patel tried to operate it. He wasn't able to do it. Uncontroverted testimony was there sometimes was a week that would go by and not one single person would stay in this place. I think that Judge Shodin looked at all of the evidence from the various witnesses and came up with this conclusion. Can you briefly tell us, and I know you don't have much time left, what evidence was there of the value? Assuming you had the burden, which I think you did, to prove that the price was not an accurate reflection of value, what evidence was there? What evidence did you put on as to value? I subpoenaed the assessor from... that the assessed value wasn't related to its market value. The assessor also testified that tax bills are sent out based on these values and in general people pay their tax bills based on these values. There had been no protest, no change in that evaluation. Is that the evidence you're relying on for value, what the assessor said? Well, at the time that the hotel was purchased for $1... In 2012. In 2012, the only evidence before the trial court, the only evidence, and the appellant could have brought in an appraiser. Okay, but the burden's on you. It was your case for equitable subordination. That's correct, and that testimony of the assessor was uncontroverted, and that is the best evidence that we have of the value at that time. Okay, is there any other that you relied on? No, Your Honor. And didn't Mr. McDaniel, on cross-examination of that witness, point out the fact that that wasn't fair market value? Didn't she concede that it wasn't fair market value? Your Honor, I don't want to answer that question because I'm not sure. Well, the record is what the record is, but I believe there was testimony on cross-examination that the assessed value was not the fair market value, and that's problematic, I think. Well, I also think that her testimony was that people pay their bills based on this, and I think that is something in the marketplace that does suggest that if they're going to pay their bills, they think that's the value. Except the bills weren't paid in this case. Well, that's true. Thank you. Thank you, Your Honors. Thank you both. Two of us were standing for you. You reserved some time. Thank you. Thank you, Mr. McDaniel. Don't take that as a cue. You don't have to use it. I apologize. That's all right. We'll make this short here. You know, the assessor did testify that assessed value is not fair market value. No doubt about that. And Packer LLC and Daiwan LLC have one member, one manager. It's the same person. So you're saying collateral estoppel would apply and really is the same parties here. Daiwan's involved in the transaction, providing the additional security. Well, whether it does or not, the bankruptcy court clearly applied it. Absolutely. And there was no appeal taken from her application of it. Absolutely.  There were three years worth of taxes that my client had to redeem. Then after those taxes were redeemed in the amount of $72,000, then the next year's taxes weren't paid and those went to tax sale eventually. Then the next two years after that, the taxes weren't paid. So the value of that is very questionable. The thing that I thought was kind of a fair argument, since you look at 510C and you look at that third element, is the simple argument. If there's a windfall that accrues to Maha Vishnu because they paid $1, then why didn't Daiwan come in or Thacker come in and bid $1? Well, you saw the testimony that's in my brief. He was done with it. He didn't want anything more to do with it. Nobody wanted anything to do with it. They had 100 people come through that property, 96 of which came through my client. They had two offers that required due diligence. None of those people purchased it. There was no market for that. Let's keep in mind 2008, 2009, what the credit markets looked like and loans and so forth. Is it surprising that somebody would bid $1? If you schedule a foreclosure and you foreclose on the property, in the end you just walk away and don't bid anything? Well, if you walk away and you don't bid anything, we know what the argument is. The argument is you should have bid at that foreclosure sale. Well, wouldn't buying the property also bring with it some liabilities? You've got a building that brings about $69,000 to $70,000 in taxes. It would be the DNR notification as the sewer lagoon, the water issue, and everything that's associated with it. Remember, they tried to market this individually, and then they tried to market it as a group. And I think there was testimony that the realtor said, oh, there's a gas station there and there's another hotel, restaurant. It all needs to be marketed together. And they just couldn't get it done. My client did everything he could, offering to essentially eliminate that total indebtedness if the person would buy it for $288,000. And they didn't buy it. So we think there is a burden on the part of the party asking under 510C to mitigate their damages. They didn't do it. They sat on the sidelines and did nothing. Thank you. I have one more quick question. And I probably should have asked this of Mr. Hockey, and I apologize for not. And maybe if the presiding judge will allow him the opportunity to also answer it. Doesn't – before you seek equity, don't you have to demonstrate that you have no adequate remedy at law? Isn't that one of the conditions of equitable relief? And wasn't there an adequate remedy at law here to object to the claim on the basis of the failure to mitigate and reduce the claim? I think we've kind of done that under the cloak of equitable subordination. Well, I think the preferred way would have been to go through the state court proceeding and to have objected to that sale. There is a procedure that's out there, and the sheriff can actually adjourn that sale. The sheriff did not do that, nor did Thakur through his member manager, Ranbin Thakur, object to that procedure. So that's really properly held in the state court proceeding by my way of thinking. Judge Fetterman, could we bend the rules just slightly and allow Mr. Hockey the opportunity to respond to that question? Because I should have put it to him. Of course. Thank you, Your Honor. What was the question again? Didn't Daiwan have an adequate remedy at law here that would not require the equitable remedy of subordination? Wouldn't it have been possible for them to object to the claim on the basis of failure to mitigate and have the secured claim reduced by the amount that was determined to be the result of the failure to mitigate? Why are we subordinating when we have the potential remedy at law? Well, I'm not sure that we do have an adequate remedy at law, and I do think I tried to bring as many arguments to bear as I could against the claim. So I think we raised numerous legal arguments against the claim. Judge Chaudine chose not to rule on those legal arguments. She didn't rule that there was or wasn't an adequate remedy at law, but I think that if you look at the Nolan case written by Judge Souter in 1996 in talking about equitable subordination, he talks about the fact that he doesn't indicate that, oh, these parties failed to do all these things and this is only a last resort. If the three aspects of equitable subordination are met, then equitable subordination should occur. Okay. Thank you. Thank you, Your Honor. Thank you, folks.